IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **ROBERT CYRUS**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**HYUNDAI MOTOR COMPANY, HYUNDAI MOBIS, INC. (formerly known as HYUNDAI PRECISION CO.), HYUNDAI TRANSLEAD (formerly known as HYUNDAI PRECISION CO.) HYUNDAI MOTOR AMERICA, and HYUNDAI MOTOR MANUFACTURING OF ALABAMA, LLC,**<br><br>    **Defendants.** | **CIVIL ACTION NO.:**<br><br>**2:06-cv-568-DRB** |

**OPPOSITION TO MOTION TO REMAND OF DEFENDANT
HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC**

Comes defendant Hyundai Motor Manufacturing Alabama, LLC ("HMMA") and submits the following opposition to Plaintiff's Motion to Remand.

## I.   INTRODUCTION

HMMA submits that Plaintiff's Motion to Remand must be denied because Plaintiff cannot avoid ERISA preemption through the mere expedient of artfully drafting his complaint. Contrary to Plaintiff's contention in his motion, it is undisputed that when Plaintiff was negotiating for his transfer to HMMA from Hyundai Motor America ("HMA"), he specifically engaged in negotiations regarding his perception of what he believed to be differences in the amount of benefits that he would receive under the HMMA Health and Welfare Plans, as opposed to the healthcare benefits he was receiving under the HMA Healthcare Plan. This negotiation led to Plaintiff's compensation being adjusted by HMMA in an effort to placate his

concerns over this perceived difference in benefits under these ERISA plans. Thus, Plaintiff's representation in his motion that there is no contention by him that the terms of these ERISA benefit plans were different is directly contrary to his contention during the time he was negotiating with HMMA for employment. Further, HMMA previously cited this Court to Eleventh Circuit case law that holds that a plaintiff cannot avoid ERISA preemption merely because the representations were made at a time when the ERISA plan had not yet been created. Plaintiff's arguments in contradiction of this binding precedent should be rejected.

## II.   ARGUMENT

### A.   Plaintiff Cannot Avoid ERISA Preemption by Artfully Drafting His Complaint

A party may not evade removal by drafting a complaint so that the true purpose of the lawsuit is artfully disguised. Romick v. Bekins Van & Storage Co., 197 F.2d 369, 370 (5th Cir. 1952) (citing Great Northern Ry. Co. v. Alexander, 246 U.S. 276 (1918). "[I]n practice, the federal courts usually do not limit their inquiry to the face of plaintiff's complaint, but rather consider the facts disclosed on the record as a whole in determining the propriety of removal." 14 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3734 (1976), citing Nunn v. Feltinton, 294 F.2d 450 (5th Cir. 1961), cert. denied, 369 U.S. 817 (1962). A review of the Complaint in conjunction with the record evidence before the Court reveals that Plaintiff's claims are preempted by ERISA.

Plaintiff argues that he is not contending in this litigation that he has challenged any difference between the healthcare plans offered by HMA and HMMA. Plaintiff alleges in the Complaint that he was provided an offer letter by Keith Duckworth of HMA, stating that Plaintiff would be entitled to the benefits a new HMA employee was eligible to receive upon hiring. (Complaint, ¶ 10). Plaintiff further alleges that the offer set forth that, when HMMA

becomes a viable and legal business entity, his benefits with HMA would cease and his benefits thereafter would be provided by HMMA. (Complaint, ¶ 10). The May 16, 2002, letter referenced by Plaintiff specifically informs him that; "In addition to your salary, you will be eligible for Group Medical, Life, Long Term Disability and Travel Accident Insurance effective immediately upon starting with Hyundai. Vision Care and Dental Care insurance are effective the first day of the month following your official hire date. All premiums for insurance are currently paid by the company." (Ex A: Second Declaration of Greg Kimble, Ex. 1). Plaintiff alleges that Duckworth orally told Plaintiff that the benefits he would eventually receive from HMMA were to be "at least the same" as HMA's benefit package. (Id.). Thus, when Plaintiff refers to "these benefits" identified in the May 16 letter, his reference includes these healthcare benefits.

     Plaintiff contends that he does seek to recover for the difference in benefits between the two healthcare plans, but claims that he only challenged the benefits of "bonus, vacation, vehicle, and relocation expenses," which he contends are not covered by ERISA plans. (Plaintiff's Motion to Remand, at 9). Plaintiff goes on to allege in the Complaint, however, that "HMMA reaffirmed the agreement between Cyrus and Hyundai Motor America" in September of 2002. (Complaint, ¶ 13). This negotiation between Cyrus and HMMA regarding his transfer to HMMA culminated in a September 18, 2004 employment offer signed by Cyrus and the Director of Human Resources and Public Relations for HMMA. (Kimble Decl., Ex. 2). The offer letter was subject to an Amendment, dated October 2, 2004, that was also signed by both Cyrus and an HMMA official. (Kimble Decl., ¶ 3). The amendment shows that there were two specific HMMA benefits that Cyrus was contending were deficient in comparison to his prior HMA benefits: (1) "the difference between the vehicle allowance amount indicated in the letter of

3

Hyundai Motor America ("HMA") dated May 16, 2002 and that of HMMA yet to be determined;" and (2) "the gap between the total beneficial amount to Mr. Cyrus between Health Care Plan of HMA and that of HMMA." (Kimble Decl., Ex. 3) (emphasis added). These were the only two benefits that Plaintiff was negotiating over supposed differences, and despite the artfully pled Complaint, the record shows that this is the "benefit package" being referenced in Paragraph 10 of the Complaint that Plaintiff now contends Duckworth orally told him that the benefits he would eventually receive from HMMA were to be "at least the same" as HMA's benefit package. (Complaint, ¶ 10). The Amendment to the Offer letter states that steps were taken to address Plaintiff's concerns over these perceived differences in benefits through an adjustment to his salary. With regard to the differences between the two ERISA plans, Plaintiff negotiated for and received an annual adjustment to his salary of $1,688.00 to "close the gap" between the differences in coverage under the two plans. (Kimble Decl., Ex. 3). It is clear that Plaintiff is challenging the difference in benefits he received under these ERISA plans. This (and the vehicle allowance) were the only two points of contention in his negotiations about receiving comparable benefits for with HMMA. The mere fact that Plaintiff artfully drafts his complaint to refer vaguely to "benefits" or a "benefit package" does not allow him to avoid preemption where the undisputed facts clearly reveal that he is pursuing claims based on ERISA plans.

**B.     The Fraudulent Representation Cases Cited by Plaintiff Are Distinguishable**

Plaintiff argues that his fraud claim should avoid ERISA preemption, but those cases to which he cites are distinguishable because they do not involve allegations relating to misrepresentations made about the terms of an ERISA plan. In Forbus v. Sears Roebuck & Co., 30 F.3d 1402 (11th Cir. 1994), cert. denied, 513 U.S. 1113 (1995), representations were made

4

that jobs would be eliminated, inducing employees to retire, when in fact the jobs were not eliminated and were filled by other employees.  The Eleventh Circuit, in declining to find ERISA preemption, held that "plaintiffs have not claimed any fraud as it relates to the amount of pension benefits proceeds, nor have the plaintiffs made any allegations that Sears misrepresented the availability of pension benefits to the plaintiffs."  Id., at 1406. The court found significant that the "alleged misrepresentation did not involve a benefit plan -- it involved the very existence of the plaintiffs' jobs." Id. at 1406.  Here, unlike in Forbus, one of the representations upon which Plaintiff bases his fraud claim relates to the difference in terms between the HMA healthcare plan and the HMMA healthcare plan as is proven through his negotiation over this supposed difference with HMMA officials when his transfer to HMMA was being consummated.  Thus, Plaintiff's claims are based squarely on the terms of these ERISA plans, and cannot be resolved without resort to the terms of the two plans.  Therefore, this case must follow the holding of cases like Sanson v. General Motors Corporation, 966 F.2d 618 (11th Cir. 1992), cert. denied, 507 U.S. 984 (1993), where the Court found that the plaintiff's fraud claim was preempted by ERISA because the plaintiff contended that he retired from his position based upon representations made to him about the benefits available and his eligibility to participate in an ERISA plan.

    Courts have consistently held that actions concerning misrepresentations about the contents of employee benefit plans are preempted by ERISA.  Butero v. Royal Maccabbees Life Ins. Co., 174 F.3d 1207, 1213 (11th Cir. 1999) (holding that "fraud in the inducement is a claim for benefits under § 1132" and that a "claim based on alleged misrepresentation that certain coverage would exist is claim for benefits")(citing Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1350 n.3 (11th Cir. 1998) and Franklin v. QHG of Gadsden, Inc., 127 F.3d 1024,

1029 (11th Cir. 1997)); see also Hall v. Blue Cross and Blue Shield of Alabama, 134 F.3d 1063 (11th Cir. 1998) (Alabama fraud and suppression claims, based on allegations that defendant misrepresented the contents of a health plan, preempted by ERISA); Phillips v. Amoco Oil Co., 799 F.2d 1464, 1469-70 (11th Cir. 1986) (ERISA preempted claim that employer fraudulently failed to disclose accurately the terms of a retirement plan), cert. denied, 481 U.S. 1016 (1987).

A more analogous case than Forbus is that of Franklin v. QHG of Gadsden, Inc., 127 F.3d 1024 (11th Cir. 1997).[1]  Like the Plaintiff, Franklin resigned a job with her former employer (Goodyear), to take a position with Baptist Memorial Hospital ("BMH").  During negotiations for the BMH position, Plaintiff contended that she was given "assurances that her husband would receive the same level of care that he was receiving under the Goodyear welfare benefits plan." Franklin, 127 F.3d at 1026.  Approximately one year after accepting employment, BMH was acquired by QHG, and she thereafter became covered by the QHG employee health plan.  Two years after the takeover, QHG informed Franklin that it was modifying the terms of its healthcare plan, and that several of the benefits she had been previously promised were being removed.  Id. Franklin filed suit in state court, alleging that she was fraudulently induced to leave her prior employment with Goodyear based on representations that she "would continue to enjoy the same level of care being provided to [plaintiff under Goodyear's medical benefits plan] and the care would not be reduced."  QHG removed the case and the Plaintiff moved to remand the case to state court.

The Court noted that the plaintiffs tried to avoid preemption by making the same argument that Plaintiff has asserted here:

---

[1] Although Franklin has been criticized for using the defensive preemption test instead of the complete preemption test, the Eleventh Circuit has held that its result is consistent with those courts who have applied the complete preemption test.  See Cotton v. Massachusetts Mutual Life Ins. Co., 402 F.3d 1267, 1288-89 (11th Cir. 2005).

> Appellants have attempted to avoid the complete preemption doctrine by characterizing the complaint as one seeking damages for fraud in the inducement, misrepresentation, and deceit. They did not allege that they are entitled to benefits pursuant to QHG's welfare benefits plan. They maintain that their state law tort claims are based solely upon the tortuous conduct in BMH's employees fraudulently inducing Mrs. Franklin to accept its offer of employment.
>
> The record shows, however, that the alleged fraudulent representations regarding the benefits that would be available to Mr. Franklin were expressly referred to BMH's welfare benefits plan. The May 18, 1993 letter to appellants sets forth the promise that was made to Mrs. Franklin as an inducement to acceptance of the offer of employment. BMH promised that Mr. Franklin would be "grandfathered into skilled nursing care" and Mrs. Franklin would be "transferred to our group #71974 effective 1/20/92, the date of Ms. Franklin's employment with us."

Franklin, 402 F.3d at 1028-29.

The Court noted that although there was no allegation of ERISA claims in the complaint, removal was proper because the complete preemption doctrine is an exception to the well-pleaded complaint rule. Just as in Franklin, while the Plaintiff may have tried to artfully avoid preemption by merely asserting fraud in the inducement claims, the record shows that Plaintiff is trying to make a claim based on supposed differences in terms between two ERISA plans. Therefore, this case is properly removable to federal court.

**C.     ERISA Preemption Extends to Representations Made Prior to the Creation of An ERISA Plan**

In a final effort to avoid ERISA preemption, Plaintiff cites to Cotton v. Massachusetts Mutual Life Ins. Co., 402 F.3d 1267, 1287 (11th Cir. 2005), as authority for the proposition that there can be no ERISA preemption when the fraudulent representations were made at a point in time prior to the creation of the plan. But Cotton does not support such a bright line determination based on when a representation is made. To the contrary, the Eleventh Circuit explicitly held in Cotton that "a plaintiff cannot avoid complete preemption simply by alleging pre-policy fraud only." Cotton, 402 F.3d at 1287. The Eleventh Circuit has clearly rejected the

7

argument that ERISA preemption hinges solely on the status of the parties at the time the representation is made: "we doubt ERISA status can be so clearly switched on and off. After all, we aren't here today solely because of fraud; we're here because Butero thinks she is due benefits under an ERISA plan." Butero v. Mccabees Life Ins. Co., 174 F.3d 1207, 1213 n.3 (11th Cir. 1999). Just as in Butero, Plaintiff contends he was not provided the benefits under the HMMA plan to which he felt he was entitled. This provides federal question jurisdiction regardless of when the representations were made.

### III.   CONCLUSION

For the foregoing reasons, Defendant Hyundai Motor Manufacturing Alabama, LLC respectfully requests that Plaintiff's Motion to Remand be denied.

Respectfully submitted this 31st day of July, 2006.

/s/ Brian R. Bostick
TIMOTHY A. PALMER (PAL009)
J. TRENT SCOFIELD (SCO024)
BRIAN R. BOSTICK (BOS015)
**OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203
(205) 328-1900
brian.bostick@odnss.com
Attorneys for Defendants Hyundai Motor
Manufacturing Alabama, LLC

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 31st day of July 2006, I electronically filed the foregoing Opposition to Motion to Remand with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Richard J. Stockham, III, Jeffrey A. Lee, Wyndall Ivey.

      /s/ Brian R. Bostick
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205)328-1900
Facsimile: (205)328-6000
brian.bostick@odnss.com